Morning, you may be seated. Okay, we're on case number three today, 4-13-0867, Peter Akemann v. Patrick Quinn. Attorney Draper is here on behalf of the appellant and Attorney Huzzah. Huzzah. Huzzah for the appellee. Mr. Draper. Thank you, Your Honor. May it please the court and counsel, we have a very straightforward fact pattern in question on today's appeal, and that is whether or not a person who claims to have been appointed to a public office has the right to seek a declaratory judgment against those who have the appointing power when there's a disagreement about whether he was or was not lawfully appointed. It raises a second question of whether there actually ever existed a second vacancy for the governor's action. Now, the order that is before the court today from the circuit court adopted arguments of the state defendants, and it's built on a very unfortunate mischaracterization of the complaint and review of the issues. So to clarify, the complaint was not filed as a breach of contract nor an employment law claim, claiming lost wages or other rights of employment, but really the question about what is the lawful requirement for appointing a person to a public office such as arbitrator of the Workers' Compensation Commission. For that, Peter Aikman sought an interpretation of the law applied to the facts that were set forth in his complaint. The complaint and the motion for preliminary injunction sought to preserve the status quo, because if indeed Aikman had been properly appointed through the reappointment process that the commission took, and if there was no vacancy, there would need to be an injunction to prevent any attempt either by the commission or the governor to appoint somebody else to the same position. And it just stands to reason you can't have two appointees for the one office. Ultimately, the court was convinced that the controversy would not have ended if declaratory relief had been granted, and frankly, I think it's obvious from reading the pleadings that it would have been. Either Peter Aikman was appointed by the commission through the reappointment process, and that process was either legal or it was not. If it was legal, and if it controlled, there was no vacancy. If it was not legal, then he had no right to continue in office. Mr. Draper, what about the fact that... I mean, I don't think there's any argument that the commission didn't follow the law when they reappointed him in May, but what about the fact that he was appointed before his term expired, and during the time he was appointed and his term expired, the law changed, providing that the governor would make the appointment. That's the issue we never got to. The court granted a 2-6-15 motion to dismiss, and that issue was something that Peter Aikman was not even allowed to brief because there was a hearing on the preliminary injunction. When these defenses weren't all raised, there was, after the case was remanded, after that injunction was denied, little argument about that in the initial briefing and only in a reply brief filed by the defendants after the oral argument before the circuit court were the issues even raised. But fundamentally, it was the position of the defendants that a proper action wasn't stated and dismissal under 2-6-15 was appropriate, and the circuit court agreed. So the problem that we face today is we have a court ruling dismissing the case prematurely without addressing the fundamental question. And I think the question that you just asked is the question. What is the impact of that Public Act 97-719? And the answer is we didn't get to reach that question because the court was convinced sovereign immunity barred injunctive relief and that a proper action for declaratory relief, which would have encompassed that very question, wasn't ever presented. Isn't it now before us anyway? It may be if the court decides that it's going to review the case on the proposition that any grounds that could be sustained on the record may be sustained. If we agreed that under the statute, the client wouldn't have the right to reappointment. Then at least we would finally reach the question that we attempted to present to the circuit court. If your position is under the statute, he's not. That's correct. So quickly addressing the questions that the court ruled on, the court made three fundamental findings that I'll look at quickly. The court found that the new public act applied, but the only part of the act that applied in the circuit court's opinion was the fact that a holdover in office could only stay in that holdover status for a maximum of 60 days. This is part of a revision to keep governors from being able to have holdovers carry on indefinitely due to inaction by the Senate or a failure of the Senate to have time to consider a proper new appointment. With that, nobody has any question, but that certainly wasn't the issue that really should have been before the court. The arguments were made and the court found that sovereign immunity barred injunctive relief because, as the circuit court believed, it didn't have the power to order the governor to make the appointment. But that presupposes the fundamental question, was there a vacancy that needed to be filled? Did, in fact, Public Act 97-719 extinguish whatever claim Mr. Aikman may have had and create a vacancy notwithstanding the attempted reappointment? So the court misconstrued the entire relief and assumed that the whole point of the lawsuit was to compel the governor to appoint Mr. Aikman based on the new statutory provision. That's something that was not before the court or raised by the plaintiff. And the court found that declaratory relief would not have ended the controversy, and indeed, as I just mentioned, it would have. There either was or wasn't a lawful appointment, and if there was a lawful appointment, the governor's power to fill vacancies would apply when the vacancies next arose, but it would not have been on July 1, 2013. The court never did interpret the Public Act in any fashion outside the ruling about the holdover appointment. Mr. Griffith, could I ask you this though? Yes. Let's assume that the appointment was lawful and it was in the usual course of the commission's business to make that appointment in May. And if I may, I think the evidence would have shown that that has been the history of appointments for 100 years, that reappointments are often done shortly before the end of a term so that the office can continue and people know who's going to be in a position of authority. It still seems to me that our legislature, when it's an appointed position, has the power to make changes to the law basically at any time. The legislature has powers to change the office, and we have to distinguish, if we get right down to the merits here, we have to distinguish changing the procedure for office from changing the procedure for someone who's already been vested with that title. And here's where the distinction is important. Peter Eggman was properly reappointed, is our claim, based on the status of the law at the time, and therefore there was no vacancy. Under the terms of the new Public Act, the governor indeed would start filling positions through the reappointment process. It simply wouldn't apply to Mr. Eggman, however, because he had already been appointed. So there were, I think, three or a handful of people like Peter Eggman who had gotten a one-year appointment the year before and whose terms were up for reappointment that the commission could act on. For any of those vacancies and for all future years, the governor indeed would have this authority. But the legislature can't pass a law ex post facto and take away an appointment that's already been given. It can change the process. But the issue seems to me to be the appointment occurred for a term that had not yet started, though. And then in the meantime, the law changed. So in other words, they were a couple of months before the expiration of his term. A couple of months before the expiration of the current term, they were doing the reappointment. He had not embarked upon his new term by the time the law changed. And, of course, he can't embark on the new term until he's been appointed. The whole point being, however, that under the state of the law as it existed, he was reappointed to begin that term. And it was intended by the commission that that term would begin on July 1. Of course, but at the time the commission made the appointment, the statute hadn't even been enacted. They didn't know that was coming. That's correct. And not only that, and I don't think it's really contested, then the commission saw that the statute might be changed. And it had not yet been. And so they tried to rescind the appointment. And when we drafted the complaint, in fact, that was the status of things that we were concerned about. I think that's become a moot point or one that's so far off to the side as to be irrelevant to the arguments now. But they attempted to rescind that. That would have presented yet a different claim that needed to be answered and today does not need to be. And so that fundamental question is, does the General Assembly have that power to, in essence, retroactively take away a reappointment done in accordance with the law immediately prior to it because of a change made two or three days before July 1, the beginning of new terms and a new fiscal year for the state? As to the merits of the appeal directly, I think there can be no question that a proper claim for declaratory relief was, in fact, filed. But that's exactly what our Code of Civil Procedure anticipates is when there is a dispute. And the only argument, really, that the defendants make in their brief is that declaratory judgment has to work more in a prospective fashion, not retrospectively. And I don't think that's a fair characterization of the law. But it is true that it can't just declare rights as to just past actions and say who was right or wrong. So if this indeed were a breach of contract case, declaratory judgment would be useful only if it somehow resolved issues moving forward. And that's what would have happened here because the question is, if Peter Aikman was lawfully appointed, could anyone, which after July 1, that anyone would be the governor, make an appointment? If the court agreed with Mr. Aikman that indeed he had been appointed and there's no vacancy, the governor would know in advance what he could do, what he could not do in terms of making an appointment. If he weren't properly appointed, then the governor would know there's a vacancy and Mr. Aikman would know that his service as an arbitrator had concluded. And so fundamentally, it fits the very argument that even the defendants raise about the proper scope of declaratory judgment relief. Keep in mind the sovereign immunity argument wasn't raised as to that portion of relief. Saw it. The other sidetrack that distracted the court and led to the erroneous judgment was sovereign immunity. Even the brief of the defendants acknowledge that sovereign immunity is not a bar to an action seeking to prevent a public official from acting in excess of his authority. And that would be the case for the governor making an appointment to the position that Peter Aikman occupied. And at the time the complaint was filed, and not only then but at the time the preliminary injunction hearing was held, and not only then but at the time that this court heard the appeal on the preliminary injunction, the governor indeed had not yet attempted to act to fill that vacancy. And so everything that was being sought worked only for the prospective relief of getting the ruling on the declaratory relief that was sought and the injunction that would be needed to protect the power of the court to issue its ruling by way of prohibiting anyone from attempting to fill that office. Peter Aikman claims that he is in fact a lawful appointee. There is scant appellate or Supreme Court guidance on questions of this kind. And the argument wasn't fully developed before the circuit court because of the act in an ex post facto. That's known from the Illinois Constitution, and my apologies to the court for not having briefed that point because I didn't intend to reach constitutional questions on a motion to dismiss. And so that is the fundamental question, though, that should be answered, whether this court decides to answer it in your opinion or whether this court directs the circuit court to consider it first, is does the General Assembly have the power? There's no question in this record by Peter Aikman that the General Assembly has the power to make changes to the process by which the Workers' Compensation Commission is organized and arbitrators are selected. The question is whether or not when you have already in place certain people who have been appointed, do they have a vested right to continue in the office to which they've been appointed so that future changes by the law are prospective only. And in our great history of fairness, due process, and predictability, it has always been the case that the General Assembly has to act prospectively when it deals with the rights of people who have already received something tangible that the law recognizes and protects. Ultimately, I don't think there can be any question but that the law recognizes a property interest in the appointment of this kind because it carries with it a given term and that term cannot be disturbed under the Workers' Compensation Act except for some form of action that can lead to termination. And that requires some showing of cause and proof that some kind of improper action, misconduct, has in fact occurred. Now, that's the nature of the rights that the General Assembly gave when it described the power and the authority of arbitrators to assume office. So it gave a property interest to Peter Aikman. It set up the procedure for reappointment which was followed and that, we believe, vested Mr. Aikman with that authority for yet the next three-year term of office. So any legislation that this Court might interpret as taking away that right once conferred would raise the due process question, would raise the question under the Illinois Constitution of whether it constitutes either special legislation or an ex post facto application of law. Under any of those scenarios, we believe Aikman was properly appointed, that the public act does not take his authority away. And one final point as to that, a year earlier the General Assembly had passed a much more sweeping so-called workers' compensation reform. In that, the General Assembly actually put into the statutes a provision that of that law and created a new process for appointment and reappointment. Now, that case is not before the Court, but the General Assembly very clearly evidenced its intention to terminate those terms of office. Public Act 97-719 did no such thing even though it amended within a year provisions that had expressly incorporated that precise language and intention. So the Court would be called upon to rule in favor of the state to decide that merely by implication, when the General Assembly has shown very clearly it knows how to terminate offices and start a new process, that merely by implication that's what was intended in this case. And that takes us a farther step. Were all the arbitrators' terms scheduled to stop on July 1st, 2011, under the 97-18? No, in that big reform back in 2011, all terms were terminated and they were at that point staggered. And then a new set of staggered terms was created. So there was a series of one-year appointments to which Peter Aikman got appointed, and then three-year appointments. But how does that mesh with your argument that once you had your term lawfully appointed, the legislature can't go back and terminate? Some of those terms were terminated midterm, right? In the law that's not before the Court, the one from the year earlier, everyone's term of office was terminated. There's presently federal litigation pending about the lawfulness of that. And I don't have any guidance from that to cite to you, although I think the claims of the arbitrators were dismissed on a due process question. But before the Court here, only one-third of the arbitrators had a one-year term like Mr. Aikman that came up for renewal, and he was renewed. But the distinguishing part was the General Assembly evidenced its intent a year earlier to terminate terms. It did not do so now, even though we had acted after Mr. Aikman was appointed. For these reasons, we don't think that the Act can be interpreted by the Court as having a direct intention by the General Assembly to, in fact, accomplish that. And if not, and even if so, it still would be an ex post facto application of the law that should not be allowed. And for those reasons, this case should have been addressed in full before the Aikman that he holds the office. Thank you, Mr. Draper. You'll have a turn on rebuttal. Mr. Hudson. Okay. May it please the Court, Assistant Attorney General Richard Huzdak, counsel for the defendants in this case, and I urge the Court to affirm the Circuit Court's judgment that dismiss this action on the merits. Our position is that there's nothing that prevents this Court from deciding the ultimate question in this case, which involves the application of the new Act, I'll refer to it, Public Act 97-719, to the appointment procedures for the term of office that the plaintiff claims he had a right to occupy. We don't believe that there's any constitutional question here. We think it's strictly a matter of statutory interpretation. The plaintiff tried to avoid the new Act by not mentioning it in his complaint, although it was filed months after the new Act took effect and he had actually left office pursuant to the change in the appointment procedures. We also don't think there's any procedural impediment to the Court deciding that question on the merits. A motion to dismiss is decided de novo. The Court can sustain it on any grounds presented by the record. The new Act, the Court can take judicial notice of. In fact, the parties briefed the application of the new Act, and the plaintiff had plenty of opportunity to raise constitutional issues, essentially did not do so. We also think that those constitutional arguments would have no merit here. Justice Polk's questions, I think, get to the heart of the matter here, and let me begin by essentially saying that we have this chronology where the Commission purported to make a renewal appointment of the plaintiff to a future term of office. I call that an anticipatory appointment, beginning at the end of his one-year term that was going to expire on July 1st of 2012. Several months before that, the Commission said, we're going to reappoint you to a renewal term starting on that date. They did so before that term began, and the statute, in effect, at the time they took that action, gave the Commission the power to make renewal appointments. And the statute was then amended before that term began to change the procedures for renewal appointments to specify that the Governor is responsible, not the Commission, for making all renewal appointments. That law said it took effect immediately, and it made clear, we believe, that it applied to this term of office that the plaintiff claimed he had a right to occupy, and I'm going to return to that statutory interpretation issue in a minute. But then the law that said it took effect immediately and gave the Governor that power to make appointments, the Governor did not appoint the plaintiff to a renewal term. So really the core question that, if the Court resolves as the defendant surged, eliminates the need to deal with the declaratory judgment, injunctive relief, sovereign immunity issues, and everything else, is, does this statute properly interpreted change the procedures in a way that apply to the term of office that the plaintiff claims a right to serve, which began after that new statute took effect? And I would say that, even more specifically, the question is whether that new statute reflected an intention by the General Assembly to create an exception for the unusual circumstances that are presented by the plaintiff's claim here, which is, there was an early appointment made for a later in time date, but that term hadn't begun when the new law took effect. Let me turn to the constitutional issue here because I want to clarify what we believe is not at issue. It is our position, and there is longstanding law to this effect, that we're not dealing with a constitutional office, we're not dealing with an elective office. We're dealing with, essentially, an executive office that is created by statute, and the law is clear that the General Assembly has absolute power over that office at all times. It can abolish the office. It can change the functions of the office. It can change the compensation for the office. It can change the manner of making appointments to the office. That is an all-inclusive power here. There was no limit on that as a matter of Illinois law. What about Mr. Walker's ex post facto argument? He's suggesting that the plaintiff had a vested right to the position by virtue of the purported appointment made by the commission before the new law took effect. There is no basis for that because the right, the ability to claim a vested right in a position, depends upon the background law that governs that position. And the background law in Illinois is it could be abolished at any time. There's hence no argument that the earlier law that Justice Pope alluded to that terminated all terms of office during their course, there's no claim that that was unconstitutional. It was clearly constitutional. This isn't a situation where somebody is elected to a particular term of office for a specified period, at which point the legislature cannot interfere with the electorate's ability to have that office filled for that period of time. It's not a constitutional office likewise. And let me say that we're talking about executive appointments. I'm not talking about judicial appointments or things that would be subject to separation of powers concerns. And so if the background law is that the General Assembly has always had the power to abolish these positions, they did it before, they can do it again, there can be no vested right in an office where the terms and conditions of the office are always subject to the condition that the legislature can say, thank you very much for your service, goodbye. We're done. We're shutting this down. We don't want this office anymore. We'll pay you for the service that you provided up to this point in time, but we're done. And there's another aspect. Even when you get beyond the constitutional argument of ex post facto, or if you want to call it some type of substantive due process right to fill an office, there is also sort of the principle of longstanding recognition that statutes should be interpreted if they're ambiguous about their temporal scope, not to apply in a retroactive manner. There's doubt about what the General Assembly intended. The presumption is that it should apply only prospectively. But that's actually what's happening here, is that the statute is applying only prospectively. It makes it clear that it applies to terms of office that begin after the law took effect. That's prospective. It's not retroactive. It's not retroactive merely because there were certain actions taken earlier in time that may have created a hope or expectancy. So the new statute took effect before Aikman's new term started? Yes. And that's the key point. And it specifies that it becomes effective immediately upon becoming law, which was before the new term was supposed to take effect.  doesn't really apply here or isn't implicated here because the statute is unambiguously clear that it applies to the very term of office that the plaintiff claims he wanted to occupy. Its temporal scope is clear. If you look at the text of the statute, and it's reproduced in relevant part at page 9 of our supplemental appendix, it makes it clear that the governor shall make all appointments to renewal terms, including terms expiring July 1, 2012. How could it not be clear that the legislature intended this gubernatorial control over the appointment process to apply to the very term that he says he has the right to occupy? So it would trump the anticipatory appointment, as you call it, by the commission? Yes, by the plain meaning of the statute. Now, I want to add that there is sort of a common law of the effectiveness of appointments to office. Now, it's sort of a gap filler. It's used to fill in uncertainties in relevant legal provisions, commonly statutes or ordinances. And the courts are clear that as a general default proposition, a person with the power to make an appointment cannot do so for a future term of office, beginning at a later date, in a way that locks in that appointment's effectiveness. If there's a change, in the meantime, in the person who has the power to make the appointment. Those are the cases cited in our brief. The general proposition is whoever is sitting in the governor's mansion today doesn't have the power to say, well, I'm appointing all renewal appointments for the next 20 years. And those are going to be effective, and those people have vested rights to occupy those offices, and nobody can change it. No, the law is that when the term of office begins, if the appointment is made as of that point in time, then it creates the principles of effectiveness that somebody can invoke, and then you would need a greater action by the legislature or the lawmaking body to cut off that term of office. But an anticipatory appointment is different because it's always subject to a change in the person who has the legal authority to make the appointment. And those cases, I think, well illustrate the lack of equity to the legislature. We had a hope that if, in fact, the commission continued to hold that power at the time that the new term began, the premature or anticipatory appointment would be deemed effective. But we don't really need to reach that issue because before that date began, the legislature exercised its authority to change the law. What if the legislature hadn't changed the law? I'm going to make the proverbial comment, which I know you always love, that's not the issue in front of you today. Here it is, but I'm curious, what if the legislature had? I think there's an argument that an anticipatory appointment that's not in conformity with the strict elements of the statute may become effective if at the time that the term begins it's otherwise valid. I don't want to concede that as a proposition of law, but I will accept the notion that maybe that's the case. But it doesn't have any legal effectiveness or validity until that point in time comes. It can't lock in some vested protection or legal effectiveness until the time comes that the term would begin. Otherwise, that would violate the notion that the legislature, the lawmaking body has the power to change those rules. And it's also would run against the general proposition that the notion is it doesn't become valid until the beginning of that term when you still occupy the position. I do want to add another point, which is in this case there is a question, which is why I sort of want to qualify my answer to Justice Steigman's question, which is the statute specifically says that reappointment shall be made upon the expiration of a term. And I think even if as a general proposition maybe anticipatory appointments might be deemed valid if at the time the term is supposed to begin they're otherwise in compliance with the relevant appointment requirements. In this case, this statute is clear in essence that any appointment to be valid, you know, to be effective couldn't be locked in if it was made before the beginning of the term. If anything, that just reemphasizes the notion that the legislature had the ability to change the rules of the road before the new terms began. I don't know that I need to really say anything more about the prior law, the argument made by opposing counsel, my friend Mr. Draper here, where he says that, you know, there the legislature cut off terms midstream as explicit. In this case, they didn't do so. There's no real contrast there because as Justice Pope pointed out, with respect to this new act that took effect in 2012, there were no terms that were cut off midstream. It only applied to the appointments for terms upon their expiration at the end of the periods prescribed by the older law. No term was being cut off, you know, midstream. If the court wants to consider questions of constitutional principle here, which were never raised below and I think were forfeited, I'd be glad to extemporize about them, but I sort of don't think that there's any merit to it. Our position is that there wasn't some type of vested right based upon this earlier appointment beyond the power of the General Assembly to change. Retroactivity principles don't apply either as a matter of constitutional protection of some type of contract right or as some default principle of statutory interpretation. And appointed positions, I'd like to add, are not really contract right positions at all. They're statutory positions. A person who has an appointed office isn't in the strict sense of the word an officer of the government. They're an appointive officer and the terms of their engagement are governed by the controlling statute and the legal principles that apply to that statute. So just really to summarize, I think the court has its arms around the relevant issues in the case. Our position is, again, that it is a question of statutory interpretation. In addition, did the General Assembly intend to create an exception to its terms for renewal appointments for the type of circumstance we have here with a pre-act anticipatory appointment by the commission? And I urge the court to conclude, based upon the language of the statute, it reflects no intention to create such an exception. In fact, it does the opposite. It says that all appointments are to be made by the governor. It specifically refers to terms beginning after terms expiring on July 1st of 2012. It makes it clear that renewal appointments, both in the prior version of the Act and the new version of the Act, are to be made upon the expiration of a term. They're all to be made by the governor. I don't think there's really any room to argue that the statute is subject to interpretation on the basis that it's ambiguous. To the extent that the court would think there's any ambiguity there with respect to such an alleged exception, the legislative history makes clear, we believe, and is consistent with our interpretation of the statutory language, that it was not intended to allow the commission to make any renewal appointments. And for those reasons, we urge the court to affirm the Circuit Court's judgment in this case. Thank you, Your Honors. Thank you, Counsel. Any rebuttal, Mr. Draper? Briefly, if I just may have a moment. Sure. Thank you for that moment. In addressing the arguments that were just made about Public Act 719, the relevant dates that are cited in the Act actually talks about persons who were appointed by the governor, whether it was before or after August 26, 2011. That's the date of the so-called workers' compensation reform legislation, not the current Act. And I'm looking, and I don't find what Counsel just alluded to that said for terms expiring after July 1, or after July 1, 2012, to be in the language of that that was provided. I invite the court to read that carefully. I just looked at it, and I'm not prepared to say it absolutely doesn't say that anywhere, but I cannot find that. I was glad Counsel also clarified something on which we both agree. This is a question about who holds a statutory office, not an employment law question, and that the employment law question consumed the preliminary injunction arguments about whether this belongs in the Court of Claims and whether this is an action for monetary damages as an adequate remedy. We're not addressing that. That ruling's already in place. But when it comes to the most important issue, I was alarmed to hear the word forfeiture. When it comes to forfeiture, the Attorney General appeared in the circuit court and argued, as so often is the case, that the court has no jurisdiction to hear the case because of sovereign immunity. The argument was made that under 2-615, this didn't state an action for declaratory judgment. There was nothing in the motion to dismiss, which is in the record and is only four sentences long, mentioning anything about the argument that Public Act 97-719 altered the process. And, in fact, because the arguments were being made that the case had to be dismissed for jurisdictional or fundamental reasons, extreme care was taken by the defendants not to go into the merits of the case because that's exactly what we were seeking. So to hear the argument that forfeiture applies when it's the state that induced the circuit court to render this confusing order is disappointing. The real question is, under the Supreme Court's guidance, this Court has followed many times, statutes are going to be interpreted according to the plain reading of the words on the paper anytime that's possible. In fact, the Court will reach to great efforts to make sure that that's what's followed, and only an ambiguity that must be resolved might resort to any other review. Where in Public Act 97-719 does it say that it applies to this particular reappointment or that the intention is to change the status that has already taken place? Is the Attorney General's counsel correct that the statute became effect before the effective date of this reappointment? And that's an important point. That was my next sentence. The statute became effective two or three days before July 1, I think on the 27th or something like that of June, when the governor signed it. If the governor had not received the bill and signed it until July 2, we would have had a completely contrary result, all for the sake of a day. Because then what counsel's calling anticipatory reappointment would have become effective July 1. Mr. Draper, is the answer to my question yes? I'm sorry. I thought I said yes, and then I said that was also going to be my next point. Well, no. I didn't hear the yes first. I meant to say yes loud and clear, because that's absolutely true. Okay. So we have the statute was effective before he started his new term. Before the official start of his new term, yes. Then why isn't counsel's argument correct that the statute applies and that the new term can't start because it wasn't appointed by the governor? Because that's not what the general assembly wrote. And we do know that when they intended to change the status of people who had been appointed, they had done so a year earlier. They did not. And there are no words saying that those vacancies are being created. It only applies to the appointments that were going to take effect on and after July for the term starting on and after July 1. I think a plain reading of the statute, evidences, and awareness that that's not what was being done. They didn't take any action to terminate it. There are no such plain words. There's no reason, and there was no reason, of course, for anybody to deal with this anticipatory issue, noting that the general assembly had just changed the entire process only one year earlier. So my time is up. So for those reasons, we don't think the law did what has been urged. I'm just going to do something a little unusual. Mr. Hussack, when Mr. Draper started arguing, he asked a question that I wanted to ask you and I didn't, and I should have. He asked, where in the statute is it that it says this applies to appointments effective July 1, 2012? If the Court may, if you have copies of our brief with the blue cover, I alluded during my oral argument to page 9 of the supplemental appendix, and we've also quoted the relevant provisions of the Act on page 5 of the body of the brief, which includes a footnote that has sort of the strikeout and underlined text. Right, I've been looking at the Act, but I don't see... Let me turn to page 9 of the appendix. I think if we're all on the same page, literally and figuratively, that may make it easier for me to present the exposition of our position. I don't think we have your appendix up here, do we? It's attached to the back of the, yeah, it was not separately filed. If I refer to it as separate appendix, I meant supplemental appendix. Okay, gotcha. And so I'm just going to walk through the relevant parts, and this essentially reflects the changes to the statute made. In subparagraph 1, the language, all appointments shall be made by the governor. That I believe there's no dispute about. In subparagraph 2, it now refers to the initial appointments that were made by the governor under the 2011 law as including terms expiring on July 1, 2012. So that is the term that the plaintiff was previously appointed to that was July 1, 2012. And then the end of subsection 2 says, thereafter, all arbitrators shall be appointed to three-year terms. So we read the all appointments shall be made by the governor, initial appointments expiring on July 1, 2012, and thereafter, all arbitrators shall be appointed to three-year terms as making clear that renewal appointments for three-year terms, for terms expiring, for terms following a term expiring on July 1, 2012, shall be made by the governor. Yeah, I don't read it that way. When you get down into that next paragraph, upon the expiration of a term, the chairman shall evaluate the performance of the arbitrator and may recommend to the governor, and then the governor, with the advice and consent of the Senate, shall reappoint for the renewal terms. That's where that language comes in. This language up above was in the prior bill. Subparagraph 1 was in the prior bill from the year before. Some of it was, but some of it was continued on in the new act. Sort of cutting to the conclusion here, I don't see how this language in a law that took effect before July 1, 2012, can mean anything other than that a renewal term, in other words, a successive term for somebody whose initial term was expiring on July 1, 2012, was a term for which the appointment had to be made by the governor. You know, sometimes our legislature overlooks certain changes that need to be made in a bill, so I'm not surprised. But anyway, thank you for trying to clarify that for us. We'll be in recess until the next case. Thank you, Your Honors.